UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| *In re* | Case No.: 16-17186-BKC-LMI |
| PCH COMMUNICATIONS, LLC, | Chapter 7 |
| _____Debtor._____/ | |
| JACQUELINE CALDERIN, CHAPTER 7 TRUSTEE, | Adv. Case No.: _____-_____ |
| Plaintiff, | |
| vs. | |
| THE 82 GROUP LLC, a New York limited liability company | |
| _____Defendant._____/ | |

## COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS

Jacqueline Calderin, as Chapter 7 Trustee (the "Trustee" or "Plaintiff") of the bankruptcy estate of PCH Communications, LLC ("PCH" or the "Debtor"), by and through undersigned counsel and pursuant to sections 544, 548, and 550 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), files this complaint (the "Complaint") to avoid and recover fraudulent transfers from The 82 Group LLC (the "Defendant"), and in support thereof, the Trustee alleges as follows:

### NATURE OF ACTION, PARTIES, JURISDICTION AND VENUE

1. Plaintiff is the duly appointed Chapter 7 Trustee of the Debtor's bankruptcy estate.

2. Defendant The 82 Group LLC is a New York limited liability company.



3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

4. This is a core proceeding for which the Court is authorized to determine all matters regarding this case in accordance with 28 U.S.C. § 157(b)(2)(A) and (H).

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A. The Bankruptcy Case

6. On May 19, 2016 (the "Petition Date"), Wide Angle Productions Group, Inc., Falcon Enterprises, Inc., and Rethink Post, LLC, initiated this matter upon the filing of an Involuntary Petition against the Debtor for relief under Chapter 7 of the Bankruptcy Code, Case No. 16-17186-BKC-LMI (the "Main Case").

7. On June 14, 2016, the Debtor filed its *Consent to Involuntary Petition* [Main Case, ECF #9] and the Court entered the *Order for Relief Under Chapter 7 of the Bankruptcy Code* [Main Case, ECF #10].

8. On June 24, 2016, Jacqueline Calderin was appointed as Chapter 7 Trustee of the Debtor's estate [Main Case, ECF #12].

### B. PCH's Formation

9. The formation of PCH was effectively a merger of several closely held advertising and public relations firms in various locations around the country, including Florida, Illinois, New York, Texas, California, and Georgia. As conceived by its founders, PCH's formation was a roll-up of various minority-owned advertising firms with the goal of becoming the largest multicultural, minority-owned advertising agency in the United States.

agentis

501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.agentislaw.com

10. In connection with the formation of PCH, on or around October 7, 2014, PCH purchased the assets and liabilities of the following agencies (the "Transaction"): (1) Wright-Islam Holdings, LLC d/b/a Commonground ("Commonground"), a Delaware limited liability company with its principal place of business in Chicago, Illinois; (2) MGSCOMM, LLC ("MGS"), a Florida limited liability company; and (3) Cunningham Group, Inc., a Florida corporation ("Cunningham Group," and collectively with Commonground and MGS, the "Predecessor Entities"), through the execution of various "Contribution Agreements" with the Predecessor Entities and their respective owners.

11. Although PCH was touted as a "merger" of the Predecessor Entities, the Transaction was in substance a leveraged buyout by PCH of the assets of the Predecessor Entities.

12. The Transaction was funded with $16.65 million (the "Funding"), comprised of: (1) a $12 million loan to PCH from Fifth Third Bank secured by substantially all the assets of PCH and (2) an equity investment by Panton Equity Partners, LLC and certain of its affiliates in the aggregate amount of $4.65 million. In addition, Commonground received a $5 million note payable from PCH.

13. Thus, the Transaction added approximately $17 million of debt to PCH's books at its inception, in addition to the existing trade debt that PCH assumed from the Predecessor Entities.

14. At the closing of the Transaction, substantially all of the Funding was disbursed to the Predecessor Entities, and subsequently to their respective equity holders, and used to pay various transactional fees and expenses.

15. As a result, PCH was left severely undercapitalized and with minimal cash from which to operate despite taking on approximately $17 million of new debt to fund the Transaction. PCH was so undercapitalized that it was likely in default of certain financial covenants under its credit agreement with Fifth Third Bank within weeks of closing the Transaction, if not immediately after closing.

16. PCH's ability to service the debt incurred to fund the Transaction was based on unreasonable growth assumptions. PCH did not and could not achieve or sustain the level of cash flow necessary to service its substantial debt obligations created by the Transaction while also providing bargained-for services to clients.

17. From the moment the Transaction closed, PCH was left with unreasonably small capital to operate, was insolvent on a balance-sheet basis, and thereafter never achieved financial viability.

**C. The Payments**

18. Within four years prior to the Petition Date, and on or around June 23, 2015 and June 26, 2015, the Debtor made payments to the Defendant in the aggregate amount of at least $80,000.00 (the "<u>Payments</u>").[1] The Debtor's books and records, however, do not indicate that the Debtor received any value in exchange for these payments, and despite the Trustee's demand to Defendant for evidence of value provided to the Debtor, the Defendant has failed to provide any records to the Trustee. Accordingly, the Debtor did not receive reasonably equivalent value.

---

[1] Bank records evidencing each of the Payments are attached hereto as <u>Composite Exhibit "A"</u>.

4



## COUNT I
## AVOIDANCE OF FRAUDULENT TRANSFERS
## PURSUANT TO 11 U.S.C. § 548(a)(1)(B)

19. The Plaintiff realleges and restates paragraphs 1 through 18 as if fully restated herein.

20. Section 548(a)(1) of the Bankruptcy Code provides that:

> The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
> . . .
>> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>>> (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>>>
>>> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>>>
>>> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>>>
>>> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B).

21. The Debtor made the Payments to the Defendant within two years prior to the Petition Date.

22. The Debtor's books and records do not indicate that the Debtor received any value in exchange for these Payments, and the Defendant has failed to provide the Trustee any

5



records evidencing any value provided to or received by the Debtor in exchange for the Payments. Accordingly, the Debtor did not receive reasonably equivalent value.

23. The Debtor was insolvent at the time of the Payments or became insolvent as a result of the Payments.

24. At the time the Debtor made the Payments, the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which the property remaining with the Debtor was unreasonably small capital.

25. At the time the Debtor made the Payments, the Debtor intended to incur, or believed that it would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

26. Accordingly, the Trustee may avoid the Payments under 11 U.S.C. § 548(a)(1)(B) to the extent that the Payments were made within two years prior to the Petition Date.

**WHEREFORE** Plaintiff, Jacqueline Calderin, respectfully requests that this Court enter judgment in her favor and against Defendant:

A. declaring the Payments to be fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B);

B. avoiding the Payments as fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B) of the Bankruptcy Code; and

C. granting such other and further relief as may be just and equitable.

**COUNT II**
**AVOIDANCE OF FRAUDULENT TRANSFERS**
**PURSUANT TO 11 U.S.C. § 544 AND FLA. STAT. § 726.105(1)(B)**

27. The Plaintiff realleges and restates the allegations made in paragraphs 1 through 18 as if fully restated herein.

agentis

501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.agentislaw.com

28. Claims of the Debtor's creditors arose prior to and after the Payments were made by the Debtor to the Defendant.

29. On the Petition Date, these creditor claims remained in existence, and were outstanding and unpaid.

30. The Trustee, as trustee of the Debtor's estate, has, as of the Petition Date, and without regard to any knowledge of the Trustee or a creditor of the Debtor, the rights and powers of:

> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; [or]
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists . . . .

*See* 11 U.S.C. § 544(a).

31. Further, section 544(b) of the Bankruptcy Code provides that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by the creditor holding an unsecured claim that is allowable under section 502 of this title . . . ." *Id.* at § 544(b).

32. Accordingly, 11 U.S.C. § 544 grants the Trustee the powers of a hypothetical, most favored lien and execution creditor or unsecured creditor of the Debtor as of the Petition Date.

Agentis
501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.agentislaw.com

33. As a hypothetical, most favored lien and execution creditor or unsecured creditor of the Debtor, the Trustee has the right to assert claims under applicable law, including, *inter alia*, Florida Statute § 726.105(1)(b), which provides, in pertinent part, that:

> (1) [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> . . .
>
> (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> (1) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (2) intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Fla. Stat. § 726.105(1)(b).

34. The Debtor's books and records do not indicate that the Debtor received any value in exchange for the Payments, and the Defendant has failed to provide the Trustee any records evidencing any value provided to or received by the Debtor in exchange for the Payments. Accordingly, the Debtor did not receive reasonably equivalent value.

35. At the time the Debtor made the Payments, the Debtor was engaged in a business or transaction, or was about to engage in a business or a transaction, for which the assets remaining with the Debtor were unreasonably small in relation to the business or transaction.

501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.agentislaw.com

36. At the time the Debtor made the Payments, the Debtor intended to incur, or reasonably should have believed it would incur, debts beyond the Debtor's ability to pay as such debts matured.

37. Accordingly, the Trustee may avoid the Payments under 11 U.S.C. § 544 and Fla Stat. § 726.105(1)(b) to the extent that the Payments were made within four years prior to the Petition Date.

**WHEREFORE** Plaintiff, Jacqueline Calderin, respectfully requests that this Court enter a judgment in her favor and against the Defendant:

    A.    declaring the Payments to be fraudulent transfers pursuant to 11 U.S.C. § 544 and Fla. Stat. § 726.105(1)(b);

    B.    avoiding the Payments as fraudulent transfers pursuant to 11 U.S.C. § 544 and Fla. Stat. § 726.105(1)(b); and

    C.    granting such other and further relief as may be just and equitable.

## COUNT III
## RECOVERY OF AVOIDED TRANSFERS UNDER 11 U.S.C. § 550

38. The Plaintiff realleges and restates the allegations made in paragraphs 1 through 18 as if fully restated herein.

39. For the reasons set forth in Counts I and II above, the Payments are avoidable pursuant to sections 544 and 548 of the Bankruptcy Code.

40. Section 550(a) of the Bankruptcy Code provides, in relevant part, that:

> [T]o the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> > (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

agentis

501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.agentislaw.com

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

41.  The Defendant was the initial transferee of the Payments or the entity for whose benefit the Payments were made, or alternatively, an immediate or mediate transferee of any initial transferee of the Payments.

42.  Accordingly, the Payments, or the value of the Payments, are recoverable by the Trustee for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 550.

**WHEREFORE** Plaintiff, Jacqueline Calderin, respectfully requests that this Court enter a judgment in her favor and against the Defendant:

A.  finding the Defendant to be the initial transferee of the Payments or the entity for whose benefit the Payments were made, or alternatively, an immediate or mediate transferee of any initial transferee of the Payments under 11 U.S.C. § 550(a);

B.  directing the Defendant to turn over to the Trustee the value of the Payments, plus pre- and post-judgment interest and the Trustee's reasonable attorneys' fees and costs; and

C.  granting such other and further relief as may be equitable and just.

Dated: June 13, 2018

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am qualified to practice in this Court as set forth in Local Rule 2090-1(A).*

**AGENTIS PLLC**
*Counsel for Chapter 7 Trustee, Jacqueline Calderin*
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
T. 305.722.2002

By: _____
Tamara Van Heel
Florida Bar No.: 107104
tvh@agentislaw.com

10



**Composite Exhibit "A"**



501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.agentislaw.com



**FIFTH THIRD BANK**
(GEORGIA)
P.O. BOX 630900 CINCINNATI OH 45263-0900

PCH COMMUNICATIONS LLC
OPERATIONS CHICAGO
3060 PEACHTREE ROAD STE 300
ATLANTA GA 30305-2218

0

2481

Statement Period Date: 6/1/2015 - 6/30/2015
Account Type: Comm'l 53 Analyzed
Account Number: RED 7518

Banking Center: Buckhead Sovereign
Banking Center Phone: 678-237-4370
Commercial Client Services: 866-475-0729

## Withdrawals / Debits - continued

| Date | Amount | Description |
|---|---|---|
| REDACTED | | |
| 06/23 | 40,000.00 | OUTGOING WIRE TRANS 062315 |
| REDACTED | | |
| 06/26 | 40,000.00 | OUTGOING WIRE TRANS 062615 |
| REDACTED | | |

## Deposits / Credits                                                              REDACTED

| Date | Amount | Description |
|---|---|---|
| REDACTED | | |

Page 3 of 4
FT 000930

Source: Wire Support from Fifth Third Bank

| TRN DATE | TRN NUMBER | SOURCE CD | AMOUNT | SBK REF NUM | DBT ID | DBT NAME1 | DBT NAME 2 | DBT NAME 3 | CDT ID | CDT NAME1 | CDT NAME2 | CDT NAME3 | BNP ID | BNP NAME1 | BNP NAME2 | BNP NAME3 | FED OMAD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/29/2015 12:00:00 AM | 7022 | C2U | 40,000.00 | 3300 | 7400737616 | PCH COMMUNICATIONS LLC | 3060 PEACHTREE ROAD STE 300 | ATLANTA GA 30305 | 0002 | *MORGAN CHASE BANK, N | NEW YORK, NY | NEW YORK, NY | 712130066 | The 62 Group, LLC | Bronx, NY | US | 0020203744A1C00257B |
| 6/29/2015 12:00:00 AM | 10050 | C2U | 40,000.00 | 3302 | 7400737616 | PCH COMMUNICATIONS LLC | 3060 PEACHTREE ROAD STE 300 | ATLANTA GA 30305 | 02100021 | *MORGAN CHASE BANK, N | NEW YORK, NY | NEW YORK, NY | 712130066 | The 62 Group, LLC | Bronx, NY | US | |